AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

| Southern | District of | New York |

MORGANNE MILES, by her mother KRYSTAL TITUS; OLIVIA MILES,
by her mother KRYSTAL TITUS; PASCALE MOSSIN, by her mother
AMY MARGARET MCCUTCIN; THEO CHAN, by his father SUNNY CHAN;
LEAH CHAN, by her father, SUNNY CHAN,

V.

MICHAEL O. LEAVITT, Secretary, United States
Department of Health and Human Services,

## SUMMONS IN A CIVIL ACTION

CASE NUMBER:

# 08 CV 0432 1

TO: (Name and address of Defendant)

Michael O. Leavitt
The U.S. Department of Health and Human Services
200 Independence Avenue, S.W.
Washington, D.C. 20201

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Please See Attached.

an answer to the complaint which is served on you with this summons, within _____60_____ days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the
Clerk of this Court within a reasonable period of time after service.

CLERK

(By) DEPUTY CLERK

DATE

JAN 1 7 2008

COPY RECEIVED
JAN 1 7 2008
U.S. ATTORNEY'S SDNY

PLAINTIFFS' ATTORNEYS

Bryan Hetherington (BH-8363)
Trilby de Jung
Empire Justice Center
One West Main Street, Suite 200
Rochester, NY  14614
(585) 454-4060

Elisabeth Ryden Benjamin (EB-0652)
Michelle Light
Community Service Society of New York
105 East 22nd St., 2nd Floor
New York, NY  10010
(212) 614-5461

Jane Perkins
National Health Law Program
211 N. Columbia Street
Chapel Hill, NC  27154
(919) 968-6308 (x102)

Gill Deford
Center for Medicare Advocacy
PO Box 350
Willimantic, CT  06226
(860) 456-2614

MORGANNE and OLIVIA MILES, by their
mother KRYSTAL TITUS, et al.

V.

MICHAEL O. LEAVITT, Secretary, United
States Department of Health and Human
Services.

AO 440 (Rev. 8/01) Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |

| NAME OF SERVER *(PRINT)* | TITLE |
|---|---|
| | |

*Check one box below to indicate appropriate method of service*

☐  Served personally upon the defendant.  Place where served:

☐  Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and
   discretion then residing therein.

   Name of person with whom the summons and complaint were left:

☐  Returned unexecuted:

☐  Other (specify):

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL $0.00 |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information
contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____     _____
                        Date                            *Signature of Server*


                                          _____
                                          *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

MORGANNE MILES, by her mother KRYSTAL
TITUS; OLIVIA MILES, by her mother KRYSTAL
TITUS; PASCALE MOSSIN, by her mother          08-CV-
AMY MARGARET MCCUTCIN; THEO CHAN,
by his father SUNNY CHAN; LEAH CHAN,          **08 CV 0432**
by her father, SUNNY CHAN,

                                              COMPLAINT
                          Plaintiffs,

v.

MICHAEL O. LEAVITT, Secretary, United States
Department of Health and Human Services,

                          Defendant.            JAN 17 2008
                                               U.S.D.C. S.....N.Y.
_____         CASHIERS

I.       INTRODUCTION

1. This is an action against the Secretary of the United States Department of

Health and Human Services ("Secretary"), who is responsible for implementing the State

Children's Health Insurance Program at the federal level in a manner consistent with the

Social Security Act and the Administrative Procedure Act. Title XXI of the Social

Security Act, the State Children's Health Insurance Program, provides States broad

flexibility to design and offer affordable, credible health insurance coverage to children

whose families cannot otherwise afford all or part of the cost of the coverage.

2. The plaintiffs are children whose ages range from 5 months to 3½ years old.

As a result of rules implemented by the Secretary in August 2007, the plaintiffs have

been denied affordable health insurance coverage through the New York State Children's

Health Insurance Program. Without this coverage, it is difficult or impossible for the

plaintiffs to obtain necessary health care, including routine check-ups and vaccines, diagnostic tests, prescriptions, and surgical procedures.

3. Plaintiffs allege that the Secretary exceeded his authority when issuing the federal rule because it includes requirements that are inconsistent with the Social Security Act and requirements that were not properly promulgated pursuant to the Administrative Procedure Act. Plaintiffs seek declaratory, injunctive, and mandamus relief to stop continued implementation of the unlawful rule.

## II.    JURISDICTION AND VENUE

4. Jurisdiction is conferred by 28 U.S.C. §§ 1331 and 1361. Plaintiffs' action for declaratory, injunctive relief, and other appropriate relief is authorized by 28 U.S.C. §§ 1651, 2201, and 2202.

5. Venue is proper under 28 U.S.C. § 1391(e).

## III.    PARTIES

6. Plaintiff Morganne Miles is a 3-year-old child who lives with her parents in Gorham, New York. She appears in this action through her mother, Krystal Titus.

7. Plaintiff Olivia Miles is a 1-year-old infant who lives with her parents in Gorham, New York. She appears in this action through her mother, Krystal Titus.

8. Plaintiff Pascale Mossin is a 2½-year-old infant who lives with her mother in New York, New York. She appears in this action through her mother, Amy Margaret McCutchin.

9. Plaintiff Theo Chan is a 3½ -year-old boy who lives with his parents in Brooklyn, New York. He appears in this action through his father, Sunny Chan.

2

10. Plaintiff Leah Chan is a 5-month-old infant who lives with her parents in Brooklyn, New York. She appears in this action through his father, Sunny Chan.

11. Defendant Michael O. Leavitt is the Secretary of the United States Department of Health and Human Services ("Department") and is responsible for administering the Department's programs consistent with federal law, including the Social Security Act and the Administrative Procedure Act. The Secretary administers the State Children's Health Insurance Program ("SCHIP") through the Centers for Medicare & Medicaid Services ("CMS"). Secretary Leavitt is sued in his official capacity.

## IV.  LEGAL FRAMEWORK

12. The SCHIP is a cooperative federal-state program that entitles States to federal funding when they implement programs that are consistent with the requirements set forth in Title XXI of the Social Security Act (the "SCHIP statute"). *See* 42 U.S.C. § 1397aa(c).

13. Originally referred to as the Children's Health Insurance Program, Title XXI was renamed the State Children's Health Insurance Program, thus emphasizing the States' broad discretion to establish and operate their programs so long as the programs meet the general requirements of the Act.

14. The purpose of SCHIP is to "provide funds to States to enable them to initiate and expand the provision of child health assistance to uninsured, low-income children in an effective and efficient manner that is coordinated with other sources of health benefits coverage for children." 42 U.S.C. § 1397aa(a).

15. To participate in SCHIP and receive federal funding, the SCHIP statute requires each participating State to submit a State Child Health Plan (a "State plan") to

3

the Secretary of the Department. The State plan "sets forth how the State intends to use the funds provided through Title XXI to provide child health assistance to needy children." 42 U.S.C. § 1397aa(b). The State plan must describe the State's eligibility standards and methodologies, outreach and coordination efforts, health benefits coverage, and performance measures and goals. 42 U.S.C. §§ 1397bb-1397gg.

16. Consistent with the SCHIP statute, the regulations promulgated by the Department confirm that "[w]ithin broad Federal rules, each State decides eligible groups, types and ranges of services, payment levels for benefit coverage, and administrative and operating procedures." 42 C.F.R. § 457.1.

17. States can participate in SCHIP by expanding their existing Medicaid programs to additional low-income children and/or by creating new, separate programs. 42 U.S.C. § 1397aa(a). The SCHIP statute provides greater flexibility to States choosing to create separate SCHIP programs, allowing these States to fashion their own SCHIP eligibility requirements and benefit packages within the parameters of Title XXI rather than adhering to stricter Medicaid eligibility and coverage rules. *Compare* 42 U.S.C. §§ 1397aa-1397jj (SCHIP requirements) *with* 42 U.S.C. § 1396a-1396v (Medicaid requirements). New York participates in SCHIP and has elected to use a separate program.

18. The SCHIP statute requires states choosing to implement a separate program to include a general description of the State's eligibility standards and methodologies in the State plan. The SCHIP statute does not define income for purposes of SCHIP eligibility but rather gives each state broad discretion to decide how and what to count as income. Thus, each State can establish eligibility standards and methodologies for

4

defining income that reflect the cost of living in the state, including health care costs. *See* 42 U.S.C. § 1397bb.

19. The SCHIP statute provides that the State child health plan "shall include a description of procedures to be used to ensure ... that the insurance provided under the State child health plan does not substitute for coverage under group health plans...." 42 U.S.C. § 1397bb(b)(3). The State plan must "include a description" of the extent to which and manner in which low-income and other classes of children have creditable health insurance coverage, current State efforts to provide or obtain creditable health coverage for uncovered children, and how the State plan is designed to be coordinated with such efforts to increase health coverage. *Id.* at § 1397bb(a).

20. In formulating regulations addressing health coverage, the Department has stated, "States have broad discretion to develop substitution prevention policies that best serve their particular populations." 66 *Fed. Reg.* 2490, 2604 (Jan. 11, 2001). The duly promulgated regulations provide that: "A State plan must include a description of—(a) The extent to which, and manner in which, children in the State, ... currently have creditable health coverage...; [and] (b) current State efforts to provide or obtain creditable health coverage for uncovered children,...." 42 C.F.R. § 457.80. In addition, "The State plan must include a description of reasonable procedures to ensure that health benefits coverage provided under the State plan does not substitute for coverage provided under group health plans...." 42 C.F.R. § 457.805.

21. Federal regulations address substitution, sometimes referred to as "crowd out," in a provision discussing a State's possible operation of a premium assistance program. 42 C.F.R. § 457.810(a). Under this rule, an enrollee must not have had

5

coverage under a group health plan for a period of at least six months prior to enrollment in a premium assistance program. A State may not require a minimum waiting period that exceeds 12 months. States can permit reasonable exceptions to the minimum waiting period, including for involuntary loss of coverage, economic hardship, and a switch to employment that does not offer dependent coverage. *Id.*

22. Nowhere in the SCHIP statute is there a requirement for a State to obtain or maintain a certain level of private insurance coverage as a condition of establishing or expanding coverage for uninsured children through SCHIP. The provisions of the Social Security Act do not authorize the Secretary to require States to obtain or maintain a certain level of private insurance coverage as a condition of establishing or expanding coverage for uninsured children through SCHIP.

23. According to the SCHIP statute, a State's eligibility standards "shall, within any defined group of covered targeted low-income children, not cover such children with higher family income without covering children with a lower family income...." 42 U.S.C. § 1397bb(b)(1)(B)(i); 42 C.F.R. § 457.320(b)(1) ("In establishing eligibility standards and methodologies, a State may *not* ... cover children with a higher family income without covering children with a lower family income within any defined group of covered targeted low-income children). In addition, the plan must "include a description of procedures to be used to ensure ... that children found eligible ... under the State Medicaid plan ... are enrolled for such assistance...." 42 U.S.C. § 1397bb(b)(3)(B); 42 C.F.R. § 457.350.

24. Thus, the SCHIP statute requires States to "cover" children in lower income groups before covering children with higher family incomes and to "describe the

6

procedures to be used to ensure that Medicaid-eligible children are "enrolled for such [Medicaid] assistance." The SCHIP statute does not require, or authorize the Secretary to require, that a certain percentage of those children eligible for coverage accept it before coverage can be offered to children in higher income families. Nor does the SCHIP statute require or authorize the Secretary to require States to enroll a certain percentage of children in Medicaid or SCHIP as a precondition of implementing or expanding SCHIP coverage to children with higher family incomes.

25. The SCHIP statute explicitly gives States that elect to establish separate SCHIPs the discretion whether or not to impose cost sharing. The SCHIP statute provides that a "State child health plan shall include a description, ..., of the amount (if any) of premiums, deductibles, coinsurance, and other cost sharing imposed." 42 U.S.C. § 1397cc(e)(1)(A).

26. If a State chooses to implement cost sharing, it cannot impose deductibles, coinsurance, or other cost sharing with respect to well baby and child care and immunizations. 42 U.S.C. § 1397cc(e)(2).

27. For children in families with incomes above 150% of the Federal Poverty Level ("FPL"), "any premiums, deductibles, cost sharing or similar charges imposed under the State child health plan may be imposed on a sliding scale related to income, except that the total annual aggregate cost-sharing with respect to all targeted low-income children in a family under this subchapter may not exceed 5 percent of such family's income for the year involved." 42 U.S.C. § 1397cc(e)(3)(B).

28. The duly promulgated regulations allow the State to decide whether to impose cost sharing in the SCHIP. 42 C.F.R § 457.510.

7

29.  The Social Security Act does not authorize the Secretary to require states to impose cost sharing, to impose cost sharing that approximates the cost of private coverage, or to impose cost sharing on well baby and child care and immunizations through the SCHIP.

30.  The SCHIP statute authorizes the Secretary to require States to collect data and furnish reports to the Secretary in the "standardized format" the Secretary may require to monitor State programs and compare the effectiveness of State plans.  42 U.S.C. § 1397gg(b).  Consistent with the SCHIP statute, the federal regulations recognize that the Secretary will obtain data and reports from states using "standardized formats." 42 C.F.R. § 457.720.

31.  The State can amend its State child health plan.  42 U.S.C. § 1397ff(b).  The SCHIP statute provides that these amendments "shall be approved" by the Secretary and "shall be effective" on the dates specified in the amendment unless the Secretary finds that the amendment does not "substantially comply" with the requirements of Title XXI. *Id.* at §§ 1397ff(b)-(e); 42 C.F.R. § 457.65(a)(1) (stating that, in general, "[a] State plan or plan amendment takes effect on the day specified in the plan or plan amendment....").

32.  The right to "alter, amend, or repeal" any provision of Title XXI is reserved to the Congress.  42 U.S.C. § 1304.

## V.  STATEMENT OF THE FACTS

A.    The August 17, 2007 CMS Letter

33.  On August 17, 2007, the CMS issued a Dear State Health Official Letter ("the Letter") informing States of new requirements that CMS would apply when States seek to extend eligibility under SCHIP to children in families with effective family income levels

above 250% of the FPL. Letter from Dennis G. Smith, Director, U.S. Department of Health and Human Services, Center for Medicare & Medicaid Services, to Dear State Health Official (Aug. 17, 2007).

34. Effective August 17, 2007, the Letter requires these States to "prevent [private] employers from changing dependent coverage policies that would favor a shift to public coverage." *Id.* The State must assure CMS that "the number of children in the target population insured through private employers has not decreased by more than two percentage points over the prior five year period." *Id.*

35. Effective August 17, 2007, the Letter requires these States to assure CMS that it has "enrolled at least 95 percent of the children in the State below 200 percent of the FPL who are eligible for either SCHIP or Medicaid (including a description of the steps the State takes to enroll these eligible children)." *Id.*

36. Effective August 17, 2007, the Letter requires these States to implement cost sharing and specifies a complicated formula for how cost sharing must be imposed: "The cost sharing requirement under the State plan compared to the cost sharing required by competing private plans must not be more favorable to the public plan by more than one percent of the family income, unless the public plan's cost sharing is set at the five percent family cap." *Id.* The Letter makes no exceptions for well baby and child care and immunizations.

37. Effective August 17, 2007, the Letter requires these States to implement a waiting period during which children must go without insurance coverage: "The State must establish a minimum of a one year period of uninsurance for individuals prior to receiving coverage." There are no exceptions to the waiting period that will allow

children to obtain protection when, for example, the family has experienced an involuntary loss of private coverage, economic hardship, and/or a switch to a new job that does not offer dependent coverage.

38.  Effective August 17, 2007, the Letter requires these States to report on a monthly basis data relating to substitution (also referred to as "crowd-out" in the Letter). *Id.* The Secretary provides no standard formats for reporting this data.

39.  The Letter was not promulgated as a regulation pursuant to the Administrative Procedure Act, 5 U.S.C. § 553.

B.    The New York SCHIP

40.  The New York children's health insurance program was created in 1990. New York State Public Health Law, Article 25, Title 1-A, Child Health Insurance Plan (Ch. 922 and 923 of the Laws of 1990). The program is known as Child Health Plus, or CHPlus.

41.  CHPlus was a prototype for the federal SCHIP authorized by Title XXI of the Social Security Act and was approved by the federal government as a SCHIP in 1998.

42.  CHPlus does not operate as or include a premium assistance program. CHPlus administers its program through private insurers, such as Empire Blue Cross Blue Shield and Affinity Health Plan.

43.  On or about April 12, 2007, the New York Department of Health filed with CMS a State plan amendment that modified the eligibility standards for its separate SCHIP.  One provision included eligibility standards and methodologies such that CHPlus coverage was expanded from the current effective family income level at or below 250% of FPL to a level at or below 400% of the FPL.  Another provision

10

implemented a six-month waiting period of prior uninsurance for children in families with incomes above 250% of FPL, with exceptions. The State plan amendment established a September 1, 2007 effective date of the expansion program.

44. On September 7, 2007, CMS notified New York that it would not approve the State plan amendment. Citing the August 17, 2007 Letter, CMS gave three grounds for its decision: (1) The State failed to provide assurances that it had enrolled at least 95% of the children with family incomes below 200% of the FPL; (2) The State did not include a one-year waiting period of uninsurance for populations over 250% of the FPL; (3) The proposed cost sharing did not meet the requirement that cost sharing under the State plan compared to the cost sharing required by competing private plans not be more favorable to the public plan by more than one percent of the family income, nor had the State proposed to set its cost sharing at the 5% family cap. Letter from Kerry Weems, Acting CMS Administrator, to Ms. Judith Arnold, Director, Division of Coverage and Enrollment, State of New York Department of Health (Sept. 7, 2007).

45. Prior to September 7, 2007, CMS had approved State plans from at least 13 other states to extend SCHIP coverage to children with family incomes at or above 250% of the FPL.

C.    Effect on the Named Plaintiffs

46. Uninsured children face reduced access to health care, lower quality of care, and often poorer health outcomes than insured children.

47. CHPlus coverage is associated with marked increases in visits to the primary care medical home for preventive, acute and chronic care. CHPlus coverage is associated

with higher quality of care, including immunization rates, reliance on the medical home for health care, and compliance with preventive care guidelines.

48. Plaintiff Morganne Miles, age 3, and Olivia Miles, age 1, live with their parents, Krystal Titus and Cory Miles in Gorham, New York.

49. Krystal Titus works full-time as a manager at Wendy's restaurant, and Cory Miles works full-time as a stone fabricator. In 2006, the family's income was approximately $32,991. As of November 2007, the family's income was $33,117. Monthly income fluctuates depending on whether Krystal and Cory can get overtime work. Without overtime, the monthly income is not enough to cover expenses, which include rent, heating and electricity, car payments and insurance, and groceries. The family shops for clothes and shoes at the Salvation Army and cuts back on groceries to try to make ends meet.

50. Plaintiff Morganne Miles was insured through Ms. Titus' employer until January 2007, when the premiums became too expensive. Plaintiff Olivia Miles celebrated her first birthday on December 1, 2007 and lost Medicaid coverage because the eligibility requirements are more restrictive for children over age one.

51. In August 2007, Ms. Titus visited the F.F. Thompson Health Center and was told she could enroll Morganne in CHPlus for a $20 per month premium. She applied and submitted a $20 money order to enroll Morganne. When New York's expansion plan was denied by the federal government, Ms. Titus was informed that she would need to pay a $196 per month premium for Morganne to have health insurance. The family cannot afford to pay the premiums. Plaintiffs Morganne and Olivia Miles are uninsured.

52. Morganne and Olivia Miles need regular check-ups with a pediatrician, and Olivia will soon need another round of childhood vaccines. Olivia has a hernia and may need surgery if the condition does not improve.

53. Plaintiff Pascale Mossin, age 2½, lives with her mother Amy Margaret McCutchin, in New York, New York.

54. Amy McCutchin is a graduate student at New York University. She works part-time jobs to earn income for her daughter and herself. In 2007, her income fluctuated widely based on her ability to work. The family has approximately $3,700 in monthly expenses, including for rent, food, transportation, child care, and health insurance premiums. She has borrowed heavily from her family and friends and has also assumed debt in financial aid for school loans. Ms. McCutchin obtains health insurance through New York University but cannot afford to pay the $380 per month in dependent coverage for Pascale.

55. In mid-August 2007, the Children's Aid Society assisted Ms. McCutchin with applying for CHPlus. She submitted an application and a $20 check for the monthly premium to Empire Blue Cross Blue Shield. In early September, she received a CHPlus insurance card for Pascale from Empire Blue Cross Blue Shield. Thereafter, she received a bill from Empire Blue Cross Blue Shield for $533 as the total amount due for a three month period of insurance, from September through December 2007. Ms. McCutchin went further into debt to pay for the insurance.

56. Plaintiff Theo Chan, age 3½, and Plaintiff Leah Chan, age 4 months, live with their parents, Sunny Chan and Edith Tay, in Brooklyn, New York.

57. The family's net monthly income is approximately $3,890, which must cover all the needs of the two children and their parents. The family has approximately $4,240 in monthly expenses, which include rent; car insurance, maintenance and gas; groceries; and health insurance for Mr. Chan and Ms. Tay. The family has financial debt, including medical debt and is struggling to make payments.

58. Ms. Tay was employed at Gemology Institute of American as a quality control analyst until May 2004, when Theo was born. She left her job to stay at home with Theo and to save money on child care. Mr. Chan is employed full-time with Multicultural Radio Broadcasting. Mr. Chan pays $560 per month for employer-sponsored insurance for himself and his wife. Mr. Chan is a diabetic, with quarterly out-of-pocket expenses for special check-ups and monthly expenses for insulin and other diabetic supplies.

59. From 2005 through July 2007, Theo was insured through CHPlus. The Chan family had difficulty making the monthly premium payment of $150, and Theo was uninsured from July 2007 until October 2007.

60. In September 2007, Mr. Chan visited the Children's Aid Society to discuss health insurance for his children. He was told that he could obtain insurance through CHPlus for a $40 per month per child premium, and he immediately wrote a check for this amount. One week later, the Children's Aid Society called Mr. Chan and told him that the monthly premium to cover both children would be $355.

61. Mr. Chan paid to insure Theo and Leah from November 2007-January 2008. The only reason he was able to make the payment was because Ms. Tay had received a

14

one-time check for a recent commercial voiceover job. Mr. Chan does not know how long he will be able to keep up the payments.

62. Plaintiff Theo Chan is an active child who suffers from allergic reactions to foods, but it is not yet known which foods. Leah has developed severe bronchitis and needs asthma medication and a nebulizer to breath. Leah and Theo Chan need routine check-ups and vaccinations.

## FIRST CLAIM FOR RELIEF
### (Administrative Procedure Act—Exceeding Statutory Authority)

63. Paragraphs 1 through 62 are incorporated by reference herein.

64. The Secretary's August 17, 2007 letter violates the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), because it does not comply with the controlling law, 42 U.S.C. §§ 1397aa-jj. The August 17 letter violates the APA, 5 U.S.C. § 706(2)(C), because it is in excess of the statutory authorization as set forth in 42 U.S.C. §§ 1397aa-jj.

## SECOND CLAIM FOR RELIEF
### (Administrative Procedure Act—Arbitrary and Capricious Actions)

65. Paragraphs 1 through 64 are incorporated by reference herein.

66. The Secretary's August 17 letter is arbitrary, capricious, an abuse of discretion and, as such, violates the APA, 5 U.S.C. § 706(2)(A).

## THIRD CLAIM FOR RELIEF
### (Administrative Procedure Act—Failure in Rule Making)

67. Paragraphs 1 through 66 are incorporated by reference herein.

68. The August 17, 2007 letter represents the promulgation by the Secretary of a new final regulation without a proper notice and comment period and, therefore, without

explanation of the comments and of the agency's resolution of the comments. The

August 17, 2007, therefore, violates the APA, 5 U.S.C. § 553, and is invalid.

PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully ask the Court to:

1. Assume jurisdiction over this case.

2. Declare that the Defendant acted in excess of his statutory jurisdiction, authority, or

limitations and thus is in violation of Title XXI of the Social Security Act and the

Administrative Procedure Act, 5 U.S.C. § 706(2)(C), by issuing the August 17, 2007

letter, which required the States, as a condition of SCHIP State plan amendment

approval, to:

    (1) impose cost sharing in approximation to the cost of private coverage;

    (2) prevent employers from changing dependent coverage policies that would

    favor a shift to private coverage;

    (3) assure that the cost sharing requirement under the State plan compared to the

    cost sharing required by competing private plans must not be more favorable to

    the public plan by more than one percent of the family income, unless the public

    plan's cost sharing is set at the 5% family cap;

    (4) establish a minimum of a one year period of uninsurance for individuals prior

    to receiving coverage;

    (5) assure that the State has enrolled at least 95% of the children in the State

    below 200% of the FPL who are eligible for either SCHIP or Medicaid;

(6) assure that the number of children in the target population insured through

private employers has not decreased by more than two percentage points over the

prior five year period.

3.  Declare that these requirements contained in the Defendant's August 17, 2007 letter

are arbitrary, capricious, and an abuse of discretion, or otherwise not in accordance with

law, and thus violate Title XXI of the Social Security Act and the Administrative

Procedure Act, 5, U.S.C. § 706(2)(A).

4.  Declare that the Defendant's August 17, 2007 letter is without legal effect unless and

until it is properly and duly promulgated as a final regulation pursuant to the

Administrative Procedure Act, 5 U.S.C. §§ 553(b)-(d).

5.  Declare that the Defendant lacks authority to consider the New York State child health

plan or State plan amendments based upon the August 17, 2007 letter.

6.  Enjoin the Defendant from imposing or continuing to impose any requirement or

condition on the approval of New York State plan amendments based on the unlawful

criteria contained in the August 17, 2007 letter and remand the State plan amendment to

the Defendant with instructions to, within 15 days of the Court's order, complete his

review of the State plan amendment consistent with the broad flexibility accorded to the

State by Title XXI of the Social Security Act and without regard to the letter of August

17, 2007 that requires States to:

(1) impose cost sharing in approximation to the cost of private coverage;

(2) prevent employers from changing dependent coverage policies that would

favor a shift to private coverage;

17

(3) assure that the cost sharing requirement under the State plan compared to the cost sharing required by competing private plans must not be more favorable to the public plan by more than one percent of the family income, unless the public plan's cost sharing is set at the 5% family cap;

(4) establish a minimum of a one year period of uninsurance for individuals prior to receiving coverage;

(5) assure that the State has enrolled at least 95% of the children in the State below 200% of the FPL who are eligible for either SCHIP or Medicaid;

(6) assure that the number of children in the target population insured through private employers has not decreased by more than two percentage points over the prior five year period.

7. Grant such other relief that this Court finds necessary; and

8. Award Plaintiffs reasonable attorneys' fees and costs.

Dated: January 16, 2008                    Respectfully submitted,

                                           MORGANNE MILES, by her mother KRYSTAL
                                           TITUS; OLIVIA MILES, by her mother
                                           KRYSTAL TITUS; PASCALE MOSSIN, by her
                                           mother AMY MARGARET MCCUTCIN; THEO
                                           CHAN, by his father SUNNY CHAN; LEAH
                                           CHAN, by her father, SUNNY CHAN,

                                           Through their attorneys,

                                           s/ Bryan D. Hetherington

                                           _____
                                           Bryan D. Hetherington (BH-8363)
                                           Trilby de Jung
                                           Empire Justice Center
                                           One West Main Street, Suite 200
                                           Rochester, NY 14614
                                           (585) 454-4060
                                           BHetherington@empirejustice.org

Juan Cartagena, General Counsel (JC-5087)
Elisabeth Ryden Benjamin (EB-0652)
Michelle Light
Community Service Society of New York
105 East 22nd St., 2nd Floor
New York, NY  10010
(212) 614-5461

Jane Perkins
National Health Law Program
211 N. Columbia Street
Chapel Hill, NC  27154
(919) 968-6308 (x102)

Gill Deford
Center for Medicare Advocacy
PO Box 350
Willimantic, CT  06226
(860) 456-2614

STATE OF NEW YORK

SOUTHERN DISTRICT OF NEW YORK
UNITED STATES DISTRICT     Court, County of                    Index No.           Year

**MORGANNE** and **OLIVIA MILES,** by their mother **KRYSTAL TITUS,** et al.

-vs-

**MICHAEL O. LEAVITT,** Secretary, United States Department of Health and Human Services

COPY                              **SUMMONS & COMPLAINT**

*Attorney(s) for*

EMPIRE JUSTICE CENTER

*Office and Post Office Address, Telephone*
1 WEST MAIN STREET
SUITE 200
ROCHESTER, NEW YORK 14614
(585) 454-4060

Attorney(s) for

Service of the within

is admitted this                    day of                    ,

................................................................
Attorney(s) for

(    ) **NOTICE OF ENTRY**
    Please take notice
    that an                                              of which the within is a copy, was duly granted in the
    within entitled action on the            day of                    , and duly entered in the office of the Clerk
    of the County of                       on the              day of

(    ) **NOTICE OF SETTLEMENT**
    Please take notice
    that an order

    of which the within is a true copy will be presented for settlement to the Hon.
    one of the judges of the within named Court, at
    on the                    day of                    ,

Dated,                                              Yours, etc.

                                    EMPIRE JUSTICE CENTER

STATE OF NEW YORK, COUNTY OF                                         ss.:

The undersigned, an attorney admitted to practice in the courts of New York State,

(    ) CERTIFICATION BY ATTORNEY  certify that the within
        has been compared by the undersigned with the original and found to be a true and complete copy.
(    ) ATTORNEY'S AFFIRMATION  shows: that deponent is
        the attorney(s) of record for
        in the within action; that deponent has read the foregoing
        and knows the contents thereof; that the same is true to deponent's own knowledge, except as to the matters therein stated to be
        alleged on information and belief, and that as to those matters deponent believes it to be true.  Deponent further says that the
        reason this verification is made by deponent and not by

The grounds of deponent's belief as to all matters not stated upon deponent's knowledge are as follows:

I affirm that the foregoing statements are true, under the penalties of perjury.


Dated:                                              _____
                                                                    The name signed must be printed beneath

_____

STATE OF NEW YORK, COUNTY OF                                         ss.:

The undersigned, being duly sworn, deposes and says :

(    ) INDIVIDUAL VERIFICATION  deponent is

        in the within matter.  Deponent has read the within
        and knows the contents thereof;  that the same is true to deponent's knowledge except as to matters therein stated to be alleged
        upon information and belief and that as to such matters deponent believes it to be true.
(    ) CORPORATE VERIFICATION  deponent is
        of                                                             , the corporation named in the within matter.
        Deponent has read the within
        and knows the contents thereof; that the same is true to deponent's knowledge except as to matters therein stated to be alleged
        upon information and belief and that as to such matters deponent believes it to be true; that the grounds for deponent's belief as
        to such matters are personal inquiry and examination conducted in the course of deponent's duties as an employee of the
        corporation.


Sworn to before me, this          day of                   20           _____
                                                                                                    The name signed must be printed beneath

_____

STATE OF NEW YORK, COUNTY OF _an_attorney_admitted_to_practice_ss.: _in the courts of New York State_ affirm.
The undersigned, being duly sworn, deposes and says; that deponent is not a party to the action, is over 18 years of age and
resides at:
        That on the   17t   day of   January      20  08, deponent served the within
(    ) AFFIDAVIT OF SERVICE BY MAIL  by depositing a true copy in a postage prepaid envelope, in an official depository under the
        exclusive care and custody of the U.S. Postal Service within New York State, addressed to each of the addressees indicated
        below at the last known address of each: _Attorney General Mukasey_ and _Secretary Leavitt_
(    ) AFFIDAVIT OF PERSONAL SERVICE ON INDIVIDUAL  by delivering a true copy of each to said recipient personally; deponent knew
        each person so served to be the person described as said recipient therein:
(    ) AFFIDAVIT OF SERVICE BY ELECTRONIC MEANS  by transmitting a copy to the following persons by ☐ FAX at the telephone number
        set forth after each name below ☐ E-MAIL at the E-Mail address set forth after each name below, which was designated by the
        attorney for such purpose, and by mailing a copy to the address set forth after each name.
(    ) OVERNIGHT DELIVERY SERVICE  by dispatching a copy by overnight delivery to each of the following persons at the last known
        address set forth after each name below.


Sworn to before me, this          day of                   20           _____
                                                                                                    The name signed must be printed beneath