UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

MORGANNE MILES, by her mother KRYSTAL TITUS; :
OLIVIA MILES, by her mother KRYSTAL TITUS; :
PASCALE MOSSIN, by her mother AMY MARGARET :
MCCUTCIN; THEO CHAN, by his father SUNNY CHAN; :
LEAH CHAN, by her father, SUNNY CHAN, :
                                                                                                            :

                Plaintiffs, :

    v.                                             :     08 Civ. 432 (PAC)

MICHAEL O. LEAVITT, Secretary, United States   :     ECF CASE
Department of Health and Human Services, :

                Defendant. :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS**

                                      MICHAEL J. GARCIA
                                      United States Attorney for the
                                      Southern District of New York
                                      Attorney for Defendant

                                      SERRIN TURNER
                                      Assistant United States Attorney
                                      86 Chambers Street
                                      New York, New York 10007
                                      Telephone: (212) 637-2701
                                      Facsimile: (212) 637-2686
                                      serrin.turner@usdoj.gov

**PRELIMINARY STATEMENT**

This case has been consolidated for purposes of briefing with *New York v. HHS*, 07 Civ. 8621 (PAC), and this brief presumes familiarity with the defendant's motion to dismiss filed therein. Plaintiffs in the instant case challenge the SHO Letter on the same substantive and procedural grounds as the state plaintiffs do. This case differs only in that it is brought by individual residents of New York, who claim to have been deprived of the opportunity to obtain health insurance as a result of CMS's denial of New York's proposed plan amendment. As explained below, the case should be dismissed for lack of jurisdiction. Plaintiffs have no right to sue over the disputes at issue, which are purely between the federal government and the states.

**ARGUMENT**

**A.    Plaintiffs Lack Standing**

As defendant has explained, CMS has not made a final decision to deny New York's proposed plan amendment; hence, the individual plaintiffs' case is unripe for the same reasons that the State of New York's case is unripe. *See* Def.'s Br. in *New York v. HHS*, Point I.A.[1]

However, even if New York's plan amendment were ultimately denied by CMS, and the individual plaintiffs remained unable to obtain SCHIP coverage as a result, they would still lack

---

[1] The individual plaintiffs' case is further unripe because it is subject to additional contingencies. Even if CMS finally denies New York's plan amendment, plaintiffs will not necessarily be denied an opportunity to obtain SCHIP coverage as a result. New York could still extend SCHIP coverage up to 400% FPL using its own funds, which it appears poised to do so in the event of an adverse decision. *See, e.g.*, *Budget Expands Health Care Access for New York's Children*, U.S. STATE NEWS, 2008 WLNR 1260888 (Jan. 22, 2008) (explaining that executive budget submitted to New York legislature for 2008-2009 includes full funding for proposed SCHIP expansion). Conversely, even if CMS approves the amendment, it is not clear that plaintiffs would be able to meet all of the other eligibility requirements for SCHIP coverage imposed by New York, which are entirely within New York's control. *See Isaacs v. Bowen*, 865 F.2d 468, 478 (2d Cir. 1989) (case unripe if "contingent on future events").

standing to sue. As an initial matter, it is difficult to see how they could allege any cognizable injury from CMS's decision. Plaintiffs were not previously entitled to coverage under New York's SCHIP program, and denial of the amendment would do no more than maintain that *status quo*. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (standing requires injury that is "an invasion of a legally protected interest"); *cf. U.S. v. Writers & Research, Inc.*, 113 F.3d 8, 12 (2d Cir. 1997) (party whose "activities were never protected under [the challenged] policy . . . could not be said to have suffered any direct injury as a result of any change to it").

Even if plaintiffs could satisfy constitutional standing requirements, their suit would still be barred by prudential standing principles – *viz.*, the principle that the judiciary should "limit access to the federal courts to those litigants best suited to assert a particular claim." *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 100 (1979); *see also N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1347 (2d Cir.1989) ("The prudential limitations on jurisdiction require that a plaintiff establish that he or she is the proper proponent of the rights asserted . . . ."). The State of New York itself is best suited to bring any challenge relating to its own proposed amendment. The state is the real party in interest, since it stands to be the direct recipient of federal funds if the amendment is approved; plaintiffs' interests are entirely derivative. Further, it is well established that "a state that is a party to a suit involving a matter of sovereign interest is presumed to represent the interests of all its citizens." *United States v. Hooker Chem. & Plastics Corp.*, 749 F.2d 968, 984-85 (2d Cir. 1984). Under these circumstances, there is simply no reason why plaintiffs should be allowed to file a redundant complaint. *Cf. Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condominium*, 458 F. Supp. 2d 160, 175 (S.D.N.Y. 2006) (dismissing associational plaintiffs on prudential grounds, as their claims were "identical" to claims of real parties in interest).

B.   **Plaintiffs' Complaint Is Statutorily Precluded**

Plaintiffs' complaint is precluded by the SCHIP statute on related grounds. Defendant has already explained that the SCHIP statute restricts *when* and *where* judicial review of CMS's plan-conformity decisions may be sought – after a final agency determination, in circuit court. *See* Def.'s Br. in *New York v. HHS*, Point I.B. By the same token, the statute restricts *who* may seek judicial review: it affords review only to "[a]ny *State* which is dissatisfied with a final determination." 42 U.S.C. § 1316(a)(3) (emphasis added). Accordingly, the statute precludes any separate right of review for individual plaintiffs.

The Supreme Court's decision in *Block v. Community Nutrition Institute*, 467 U.S. 340, is directly on point. There, the Court held that milk consumers were statutorily precluded from obtaining judicial review of federal price controls imposed on the dairy industry. Even though the relevant statute sought to protect consumer interests, *id.* at 347, the Court found that Congress did not intend for consumers to enforce its provisions, *id.* at 352-53. The Court explained that the statutory text afforded only dairy "handlers" (*i.e.*, processors) the right to judicial review, after exhaustion of administrative remedies. *Id.* Further, the statute's administrative scheme "contemplate[d] a cooperative venture" with the federal government in which "[h]andlers and producers – but not consumers – are entitled to participate." *Id.* at 346. Had Congress intended to permit consumers to obtain judicial review, the Court stated, "it surely would have required them to pursue [this administrative process] as well." *Id.* at 347. The Court also noted that the administrative process could easily be circumvented were consumer suits allowed: "a handler would need only to find a consumer who is willing to join in or initiate an action in the district court . . . [who] could then raise precisely the same exceptions that the handler must raise administratively." *Id.* at 348. Hence, the Court found consumer suits precluded by the structure of the act. As it held: "[W]hen a statute provides a detailed mechanism for judicial consideration of particular

-3-

issues at the behest of particular persons, judicial review of those issues at the behest of other persons may be found to be impliedly precluded." *Id.* at 349.

A similar analysis applies here. Although the ultimate purpose of the SCHIP statute is to provide insurance to low-income children, Congress chose not to afford individual beneficiaries any entitlement to enforce program requirements. *See* 42 U.S.C. § 1397bb(b)(4) ("Nothing in this subchapter shall be construed as providing an individual with an entitlement to child health assistance . . . ."). Rather, the program was designed as an inter-governmental venture in which the only two partners are the federal government and the states. Thus, the state is exclusively responsible for advancing the interests of its citizens in the administrative process: only the state may propose an amendment to its SCHIP plan, 42 U.S.C. §§ 1316(a)(1), 1397ff(b); only the state is entitled to negotiate with CMS about it, 42 U.S.C. §§ 1316(a)(1), 1397ff(c)(2)-(3); and only the state is entitled to request reconsideration by CMS if the amendment is denied, 42 U.S.C. § 1316(a)(2). Likewise, and most important, only the state is given the right to seek judicial review of the agency's final decision. *Id.* § 1316(a)(3).

As in *Block*, given that individual citizens are not required, or even entitled, to participate in the SCHIP administrative process, it would be incongruous to allow them to sue over matters decided through that process. Indeed, states would have little incentive to exhaust their administrative remedies – by building a complete record and raising all possible arguments with CMS – if they could expect individual plaintiffs to sue in any event, who would not be bound by exhaustion requirements in the same way. Equally troublesome is the possibility that states and individuals could sue simultaneously – especially given that such suits would have to be brought in different fora. (States must appeal directly to circuit court under § 1316(a)(3), while individuals are not covered by the provision and could sue only in district court.) "It is highly unlikely that Congress intended to create a scheme involving multiple avenues of review and potential contra-

-4-

dictory results." *NRDC v. Johnson*, 461 F.3d 164 (2d Cir. 2006); *see also Sun Enterprises, Ltd. v. Train*, 532 F.2d 280, 287 (2d Cir. 1976) ("[T]here is a strong presumption against the availability of simultaneous review in both the district court and the court of appeals.").

In short, because the SCHIP statute provides a detailed administrative and judicial review scheme for states, review "at the behest of other persons" is impliedly precluded. *Block*, 467 U.S. at 349. Importantly, "[p]reclusion of such suits does not pose any threat to realization of the statutory objectives; it means only that those objectives must be realized through the specific remedies provided by Congress and at the behest of the parties directly affected by the statutory scheme." *Id*. at 352-53. Indeed, it is entirely unremarkable for Congress to opt for such an arrangement where the "parties directly affected by the statutory scheme" are state governments, which, as discussed above, are presumed to represent the interests of all their citizens.[2]

## CONCLUSION

For the reasons above, plaintiffs' complaint should be dismissed for lack of jurisdiction.

Dated: New York, New York  
       March 17, 2008

MICHAEL J. GARCIA  
United States Attorney for the  
Southern District of New York  
Attorney for Defendant

By: _____*/s/ Serrin Turner*_____  
    SERRIN TURNER  
    Assistant United States Attorney

---

[2] Although the D.C. Circuit held in a pre-*Block* case that 42 U.S.C. § 1316(a)(3) does not preclude individuals from obtaining judicial review with respect to decisions covered by the provision, *see Nat'l Welfare Rights Org. v. Finch*, 429 F.2d 725, 734 (D.C. Cir. 1970), the holding cannot be squared with the Supreme Court's decision in *Block*. The *Finch* case further held that individuals are entitled to participate in agency proceedings governed by § 1316, *see* 429 F.2d at 736; but that holding, too, has been abrogated by intervening Supreme Court precedent, *see Envirocare of Utah, Inc. v. Nuclear Regulatory Comm'n*, 194 F.3d 72, 78 (D.C. Cir. 1999).