UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
MORGANNE MILES, by her mother KRYSTAL MILES, et al.,

                Plaintiffs,

  - against -

MICHAEL O. LEAVITT, as Secretary of the United States Department of Health and Human Services,

                Defendant.

------------------------------------------------------------------x

08 Civ. 432 (PAC)

ECF CASE

## STATEMENT OF MATERIAL FACTS NOT IN CONTROVERSY

PURSUANT TO LOCAL CIVIL RULE 56.1 Plaintiffs submit that the following facts are not in controversy:

1. Plaintiffs Morganne Miles, age 4, and Olivia Miles, age 1, live with their mother, Krystal Miles, and their Father, Corey Miles, in Gorham, New York. (Miles Dec. ¶ 1-2)

2. Morganne Miles was enrolled in subsidized health insurance coverage under New York's Child Health Plus (CHPlus) in September of 2007. (Miles Dec. ¶ 11)

3. Krystal Miles paid $20 to enroll Morganne in CHPlus for September and planned to enroll Olivia at the same rate when her Child Health Plus coverage

expired on her first birthday. (Miles Dec. ¶ 11)

4. Later in September 2007 Ms. Miles was notified by letter that she would in fact need to pay the full unsubsidized premium of $196 per month for health insurance coverage for her child Morganne, as opposed to the $20 reduced monthly premium that she had anticipated and had paid, . (Miles Dec. ¶ 12)

5. Ms. Miles could not afford to pay the almost ten times greater monthly premium to insure Morganne or Olivia. (Miles Dec. ¶ 12)

6. Morganne and Olivia were forced to go without health insurance coverage from October until December of 2007 when Ms. Miles was able to find a new job that provided health insurance at a cost that her family could only afford by using money that would have paid for groceries and other necessities. (Miles Dec. ¶¶ 13 and 15)

7. Health coverage expenses consume approximately 10% of the Miles family's net monthly income. The remainder of their income is spent on basic necessities and work expenses like child care and car expenses. (Miles Dec. ¶¶ 6 and 7)

8. Ms. Miles has been forced to take a job with hours (4 pm to midnight) that force her to spend dinner time and bedtime away from her children and

husband in order to provide health care coverage that her children desperately need both for preventive care and existing conditions, like repair of Olivia's hernia. (Miles Dec. ¶¶ 13 and 15 - 18)

9. Ms. Miles now pays $296.44 per month to insure her family through her employer. (Miles Dec. ¶ 15)

10. Plaintiff Pascale Mossin, age 2 ½, resides with her mother, Amy Margaret McCutchin, in New York, New York. (McCutchin Dec. ¶ 1-2)

11. Pascale was in receipt of subsidized health care coverage under CHPlus in September of 2007. (McCutchin Dec. ¶ 15-16)

12. Amy Margaret McCutchin paid $20 to Empire Blue Cross Blue Shield for coverage for the month of September 2007. (McCutchin Dec. ¶ 14)

13. In September 2007 Ms. McCutchin received a letter from Empire Blue Cross Blue Shield stating that she would in fact need to pay $533.16 for a three-month period beginning September 1, 2007, or a full $177.72 monthly premium, as opposed to the $20 reduced monthly premium that she had anticipated and paid for. (McCutchin Dec. ¶ 17)

14. Ms. McCutchin is now paying a full $177.72 monthly premium for CHPlus

for Pascale. (McCutchin Dec. ¶ 18)

15. Paying for unsubsidized health insurance coverage Pascale is very difficult for Ms. McCutchin, given her income, but she is willing to go without other needed items to make sure Pascale has coverage for both preventive care and in case of an emergency need. (McCutchin Dec. ¶¶ 19 - 22)

16. Plaintiffs Theo Chan, age 3 ½, and Leah Chan, age 5 months, live with their father, Sunny Chan, and their mother, Edith Tay, in Brooklyn, New York. (Chan Dec. ¶ 1-2)

17. Theo and Leah were in receipt of CHPlus in October of 2007 at the subsidized premium rate of $40 per month per child. (Chan Dec. ¶ 11)

18. Sunny Chan wrote a check for $80 for coverage for the month of October 2007 for both of his children. (Chan Dec. ¶ 11)

19. One week later Mr. Chan was notified by a facilitated enroller at the Children's Aid Society that he would in fact need to pay the full $355 per month to insure both of his children, as opposed to the $40 per child reduced monthly premium that he had anticipated and paid. (Chan Dec. ¶ 11)

20. Mr. Chan is now paying a full $355 monthly premium for CHPlus for Theo

and Leah. (Chan Dec. ¶ 13)

21. Mr. Chan makes these payments, despite the financial hardship they cause his family, because of his concern that his children have medical needs that must be met both proactively for things like the many check-ups and vaccinations needed for young children and to deal with the existing conditions of Theo (food allergies that have yet to be pinpointed) and Leah (severe bronchitis). (Chan Dec. ¶ 13 and 16 - 18)

22. On August 17, 2007 Dennis G. Smith the Director of the Center for Medicaid and State Operations in the Department of Health and Human Services issued a directive, addressed to State Health Officials and numbered SHO #07-001. A true and complete copy of that directive is attached as Exhibit A.

23. The directive sets forth additional criteria that CMS will use to evaluate SCHIP programs. It states: "CMS will apply this review strategy to SCHIP state plans and section 1115 demonstration waivers that include SCHIP populations, and will work with States that currently provide services to children with effective family incomes over 250 percent of the FPL. We expect affected states to amend their SCHIP state plans (or 1115 demonstration) in accordance with this review strategy within 12 months, or CMS may pursue corrective action."

24. Defendant did not promulgate the new criteria for reviewing SCHIP State Plan Amendments and re-reviewing existing SCHIP programs over the next 12 months through publication of notice of proposed new criteria in the Federal Register and allowing public comment by those who might be affected by the new criteria. (Exhibit A).

25. On September 7, 2007, Defendant denied the SCHIP state plan amendment that New York had filed on April 12, 2007, based on the new criteria for evaluating state plan amendments promulgated in the August 17 Directive. (Exhibit A to Turner Dec., *State of New York v. U.S Dep't HHS*, 07-CV-8621 (PAC); Arnold Dec., *State of New York v. U.S Dep't HHS*, 07-CV-8621 (PAC) ¶¶ 9, 21).

*s/ Bryan D. Hetherington*

---
Bryan D. Hetherington
One of Plaintiffs' Attorneys
Empire Justice Center
One West Main Street, Suite 200
Rochester, NY 14614
Telephone: (585) 454-4060

April 16, 2008

# Exhibit A

DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
7500 Security Boulevard, Mail Stop S2-26-12
Baltimore, Maryland 21244-1850



CENTERS for MEDICARE & MEDICAID SERVICES

**Center for Medicaid and State Operations**

**August 17, 2007**                                                                                       SHO #07-001
Dear State Health Official:

This letter clarifies how the Centers for Medicare & Medicaid Services (CMS) applies existing statutory and regulatory requirements in reviewing State requests to extend eligibility under the State Children's Health Insurance Program (SCHIP) to children in families with effective family income levels above 250 percent of the Federal poverty level (FPL). These requirements ensure that extension of eligibility to children at these higher effective income levels do not interfere with the effective and efficient provision of child health assistance coordinated with other sources of health benefits coverage to the core SCHIP population of uninsured targeted low income children.

Section 2101(a) of the Social Security Act describes the purpose of the SCHIP statute "to initiate and expand the provision of child health assistance to uninsured, low-income children in an effective and efficient manner that is coordinated with other sources of health benefits coverage." Section 2102(b)(3)(C) of the Act, and implementing regulations at 42 CFR Part 457, Subpart H, require that State child health plans include procedures to ensure that SCHIP coverage does not substitute for coverage under group health plans (known as "crowd-out" procedures). In addition, section 2102(c) of the Act requires that State child health plans include procedures for outreach and coordination with other public and private health insurance programs.

Existing regulations at 42 C.F.R. 457.805 provide that States must have "reasonable procedures" to prevent substitution of public SCHIP coverage for private coverage. In issuing these regulations, CMS indicated that, for States that expand eligibility above an effective level of 250 percent of the FPL, these reasonable crowd-out procedures would include identifying specific strategies to prevent substitution. Over time, States have adopted one or more of the following five crowd-out strategies:

- Imposing waiting periods between dropping private coverage and enrollment;
- Imposing cost sharing in approximation to the cost of private coverage;
- Monitoring health insurance status at time of application;
- Verifying family insurance status through insurance databases; and/or
- Preventing employers from changing dependent coverage policies that would favor a shift to public coverage.

As CMS has developed more experience and information from the operation of SCHIP programs, it has become clear that the potential for crowd-out is greater for higher income beneficiaries. Therefore, we are clarifying that the reasonable procedures adopted by States to prevent crowd-out pursuant to 42 C.F.R. 457.805 should include the above five general crowd-out strategies with certain important components. As a result, we will expect that, for States that expand eligibility above an effective level of 250 percent of the FPL, the specific crowd-out

Page 2 - State Health Official

strategies identified in the State child health plan to include all five of the above crowd-out strategies, which incorporate the following components as part of those strategies:

- The cost sharing requirement under the State plan compared to the cost sharing required by competing private plans must not be more favorable to the public plan by more than one percent of the family income, unless the public plan's cost sharing is set at the five percent family cap;
- The State must establish a minimum of a one year period of uninsurance for individuals prior to receiving coverage; and
- Monitoring and verification must include information regarding coverage provided by a noncustodial parent.

In addition, to ensure that expansion to higher income populations does not interfere with the effective and efficient provision of child health assistance coordinated with other sources of health benefits coverage, and to prevent substitution of SCHIP coverage for coverage under group health plans, we will ask for such a State to make the following assurances:

- Assurance that the State has enrolled at least 95 percent of the children in the State below 200 percent of the FPL who are eligible for either SCHIP or Medicaid (including a description of the steps the State takes to enroll these eligible children);
- Assurance that the number of children in the target population insured through private employers has not decreased by more than two percentage points over the prior five year period; and
- Assurance that the State is current with all reporting requirements in SCHIP and Medicaid and reports on a monthly basis data relating to the crowd-out requirements.

We will continue to review all State monitoring plans, including those States whose upper eligibility levels are below an effective level of 250 percent of the FPL, to determine whether the monitoring plans are being followed and whether the crowd-out procedures specified in the SCHIP state plans are reasonable and effective in preventing crowd-out.

CMS will apply this review strategy to SCHIP state plans and section 1115 demonstration waivers that include SCHIP populations, and will work with States that currently provide services to children with effective family incomes over 250 percent of the FPL. We expect affected States to amend their SCHIP state plan (or 1115 demonstration) in accordance with this review strategy within 12 months, or CMS may pursue corrective action. We would not expect any effect on current enrollees from this review strategy, and anticipate that the entire program will be strengthened by the focus on effective and efficient operation of the program for the core uninsured targeted low-income population. We appreciate your efforts and share your goal of providing health care to low-income, uninsured children through title XXI.

Page 3 - State Health Official

If you have questions regarding this guidance, please contact Ms. Jean Sheil, Director, Family and Children's Health Programs, who may be reached at (410) 786-5647.

Sincerely,

/s/
Dennis G. Smith
Director

cc:

CMS Regional Administrators

CMS Associate Regional Administrators,
    Division of Medicaid and Children's Health

Martha Roherty
Director, Health Policy Unit
American Public Human Services Association

Joy Wilson
Director, Health Committee
National Conference of State Legislatures

Matt Salo
Director of Health Legislation
National Governors Association

Debra Miller
Director for Health Policy
Council of State Governments

Christie Raniszewski Herrera
Director, Health and Human Services Task Force
American Legislative Exchange Council

Jacalyn Bryan Carden
Director of Policy and Programs
Association of State and Territorial Health Officials