UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

**MORGANNE MILES,** by her mother KRYSTAL MILES; OLIVIA MILES, by her mother KRYSTAL MILES; PASCALE MOSSIN, by her mother AMY MARGARET MCCUTCHIN; THEO CHAN, by his father SUNNY CHAN; LEAH CHAN, by her father, SUNNY CHAN,

                Plaintiffs,

v.

**MICHAEL O. LEAVITT,** Secretary, United States Department of Health and Human Services,

                Defendant.

08-CV-0432 (PAC)

ECF CASE

---

## PLAINTIFFS' RESPONSE IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Bryan D. Hetherington
Trilby de Jung
Empire Justice Center
One West Main Street, Suite 200
Rochester, NY 14614
(585) 454-4060

Juan Cartagena, General Counsel
Elisabeth Ryden Benjamin
Michelle Light
Community Service Society of New York
105 East 22nd St., 2nd Floor
New York, NY 10010
(212) 614-5461

Jane Perkins (admitted *pro hac vice*)
National Health Law Program
211 N. Columbia Street
Chapel Hill, NC 27154
(919) 968-6308 (x102)

Gill Deford (admitted *pro hac vice*)
Center for Medicare Advocacy
PO Box 350
Willimantic, CT 06226
(860) 456-7790

## TABLE OF CONTENTS

                                                                                            **Page**

INTRODUCTION .................................................... 1

ARGUMENT ....................................................... 5

THE AUGUST 17 DIRECTIVE CONTRADICTS THE SCHIP STATUTE AND
VIOLATES THE APA ................................................ 5

    A.    The Directive Is Contrary to the Intent of Congress as Expressed in the
          SCHIP Statute ............................................. 6

    B.    The Directive is Arbitrary and Capricious ...................... 7

    C.    The Directive Was Not Promulgated in Accordance with the APA's
          Rulemaking Requirements ................................. 8

CONCLUSION ..................................................... 15

## INTRODUCTION

In this challenge by beneficiaries of New York's Child Health Plus program (CHPlus), the defendant Secretary has filed neither a reply in support of his Motion to Dismiss nor an opposition to plaintiffs' Motion for Summary Judgment, nor has he filed the required response to plaintiffs' Statement of Material Facts. *See* Local Rule 56.1(b). He has filed a reply and opposition memorandum in No. 07 Civ. 8621, which is a separate action brought by New York and several other states. That document, however, not only does not address the plaintiffs' arguments in *this* case, but does not even acknowledge the existence of those arguments.

Certainly the Secretary's silence is not the result of simple negligence, as he is fully aware of the Beneficiary Plaintiffs' case. He filed a Motion to Dismiss directed specifically at their claims. Furthermore, he sought additional time from counsel for the Beneficiary Plaintiffs to file his latest brief, with a proposed order including captions for both cases, which this Court signed. But his filing of May 16, 2008 is directed solely at the State Plaintiffs in No. 07 Civ. 8621, as the captions on the several documents indicate and as his references limited only to the plaintiffs in that case make clear.[1]

The effect of this peculiar litigation stratagem is three-fold: 1) the Secretary has admitted the facts as set out by the Beneficiary Plaintiffs; 2) he has implicitly recognized the validity of the Beneficiary Plaintiffs' repudiation of his jurisprudential arguments; and 3) he has placed himself in a precarious position by not directly responding to the Beneficiary Plaintiffs' arguments on the merits.

---

[1] *See* Reply Mem. in Further Support of Def. Motion to Dismiss and Opposition to Pl. Motion for Summary Judgment in No. 07 Civ. 8621 ("Def. Reply and Opp."), at 4 n.2 (explaining that references in his brief to "Pls.' Br." are "to the state plaintiffs' memorandum in opposition").

First, the Secretary's decision not to contest the Beneficiary Plaintiffs' Statement of Material Facts establishes those facts as uncontroverted: "If the opposing party ... fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted. *See* Local Rule 56.1(c)." *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003). Of course, the moving party must have evidentiary support for their statements of fact, *id.* at 140-41; *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004), but here the Beneficiary Plaintiffs have documented each of their statements of fact. In the absence of any effort by the Secretary to dispute those statements, they are all deemed admitted.

Those admissions establish that the Beneficiary Plaintiffs

- paid for and were enrolled in CHPlus for subsidized health coverage in September or October of 2007;
- were later informed that that coverage was being withdrawn;
- were therefore forced either to forego health insurance altogether for a period of time and/or to pay considerably more for health insurance with the consequent adverse impact on their families' financial circumstances; and
- had no opportunity to comment on the Secretary's August 17 Directive because it was not promulgated pursuant to the APA's rulemaking standards.

These facts demonstrate that the Beneficiary Plaintiffs have suffered harm, and continue to so suffer, from the challenged policy because it deprived them of low-cost health insurance for which they had paid and been enrolled. Furthermore, the Secretary has not

2

disputed the Beneficiary Plaintiffs' observation that, unlike the States, they can never be made whole for the losses that they have suffered. *See* Pl. Mem. in Opp. to Def. Motion to Dismiss and in Support of Pl. Motion for Summary Judgment ("Pl. SJ Mem.") at 2.

These determinations tie in to the second point to be drawn from the Secretary's failure to respond to the Beneficiary Plaintiffs' arguments. While the Secretary devotes many pages to responding to the State Plaintiffs' contentions, his silence in response to the Beneficiary Plaintiffs' arguments is an implicit recognition that they are in a considerably different posture. Whatever the validity of the Secretary's jurisprudential arguments directed at the State Plaintiffs, there can be no doubt that the Beneficiary Plaintiffs' challenge to the August 17 Directive is ripe and ready for review and that the Beneficiary Plaintiffs have been harmed by the challenged policy.

Furthermore, with no ability to participate in the administrative and judicial process arguably available to the State Plaintiffs, the Beneficiary Plaintiffs' only recourse and means of judicial review is via an APA challenge with jurisdiction in this court pursuant to 28 U.S.C. § 1331. *Cf. Finnerty v. Cowen*, 508 F.2d 979, 984 (2d Cir. 1974) (district court jurisdiction to review federal agency policy that cannot be decided in the administrative process is not precluded by a provision limiting review of administrative decision to court of appeals). Regardless of whether the provision touted by the Secretary (28 U.S.C. § 1316(a)) provides the sole source of review for the State Plaintiffs' claims, that provision affords neither administrative nor judicial review for the claims of the Beneficiary Plaintiffs, thus entitling them to review under the APA. Even by the standard urged by the Secretary, therefore, the Beneficiary Plaintiffs lack not just

3

an effective remedy, but "an adequate one," Def. Reply and Opp. at 29 n.12, and their APA claim should proceed.[2]

Third, the Second Circuit has termed the failure to submit a response to a summary judgment motion a "perilous path." *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001). Nevertheless, "[t]he local rule does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 74 (2d Cir. 2001); *see also* F.R.Civ.P. 56(e) (authorizing the district court to enter summary judgment in the absence of opposition only "if appropriate"). Consequently, although the Secretary's failure to respond to the Beneficiary Plaintiffs' summary judgment motion establishes the factual basis for their claims, they still must demonstrate the correctness of their legal position.

With the Secretary offering no specific objections to the Beneficiary Plaintiffs' legal arguments, however, there is some difficulty in attempting to "respond." In this unusual circumstance, the Beneficiary Plaintiffs believe that the most appropriate approach is to evaluate those arguments made by the Secretary in his opposition to the State Plaintiffs' Motion for Summary Judgment that could potentially affect the Beneficiary Plaintiffs' contentions. Accordingly, this brief will analyze those arguments (where relevant) to further demonstrate the Beneficiary Plaintiffs' entitlement to summary judgment.

---

[2] As the Beneficiary Plaintiffs have previously explained, however, nothing in the SCHIP statute precludes APA review in any event. *See* Pl. SJ Mem. at 4-8.

# ARGUMENT

## THE AUGUST 17 DIRECTIVE CONTRADICTS THE SCHIP STATUTE AND VIOLATES THE APA.

The Beneficiary Plaintiffs have made three related but separate arguments under the APA. They contend first that the Directive is invalid because its contents are contrary to the SCHIP statute and must be set aside pursuant to 5 U.S.C. § 706(2)(C). *See* Pl. SJ Mem. at 10-14. Second, the Directive is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" in violation of 5 U.S.C. § 706(2)(A). *See id.* at 12, 14. Third, the Beneficiary Plaintiffs contend that the Directive is invalid because it was a binding rule issued in violation of the APA's rulemaking requirements, 5 U.S.C. § 553(b). *See id.* at 14-20. These arguments are made in the alternative, and success on any of them dictates judgment for the Beneficiary Plaintiffs and invalidates the Directive.

The Beneficiary Plaintiffs' first contention "is governed by the standards set forth in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 ... (1984)," while the second "is governed by the standard set forth in *Motor Vehicle Manufacturers' Association of the United States, Inc. v. State Farm Mutual Automobile Insurance Company*, 463 U.S. 29 ... (1983)." *Waterkeeper Alliance, Inc. v. U.S.E.P.A.*, 399 F.3d 486, 497-98 (2d Cir. 2005) (secondary citations omitted); *see also, e.g., Riverkeeper, Inc. v. U.S.E.P.A.*, 358 F.3d 174, 184 (2d Cir. 2004).[3] The Beneficiary

---

[3] In an effort to explain the sometimes overlapping aspects of those first two arguments, one court has explained that "*Chevron* step two ... analyzes the reasonableness of an agency's interpretation, while 'arbitrary and capricious' review under the APA focuses on the reasonableness of an agency's decision-making processes." *CHW West Bay v. Thompson*, 246 F.3d 1218, 1223 (9th Cir. 2001); *see also, e.g., Anna Jacques Hospital v. Leavitt*, 537 F. Supp. 2d 24, 34 (D.D.C. 2008) ("the inquiry under *Chevron* step two is directed primarily at the decision of the agency, whereas challenges under the arbitrary and capricious standard focus mainly on the

5

Plaintiffs' third contention requires a determination of whether promulgation of the Directive is subject to the APA's rulemaking procedures.

### A. The Directive Is Contrary to the Intent of Congress as Expressed in the SCHIP Statute.

Under the familiar *Chevron* test, the first consideration is whether the intent of Congress is clear.

> To ascertain Congress's intent, we begin with the statutory text because if its language is unambiguous, no further inquiry is necessary. If the statutory language is ambiguous, however, we will resort first to canons of statutory construction, and, if the [statutory] meaning remains ambiguous, to legislative history to see if these interpretive clues permit us to identify Congress's clear intent.

*Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 116 (2d Cir. 2007) (citations and internal quotation marks omitted). The ordinary meaning of terms, their context, and their dictionary definitions inform this analysis. *Id.* at 117-18. In furtherance of this effort, courts also look to the structure and purpose of the statutory scheme, and to its legislative history. *Id.* at 120-23.

In their opening brief, the Beneficiary Plaintiffs argued that the August 17 Directive is inconsistent with the intent of Congress, as expressed in provisions of the SCHIP statute that are precise and unambiguous. Pl. SJ Mem. at 10-14. These facial inconsistencies involve the statutory provisions that address cost sharing and the 95 percent enrollment requirement. The August 17 Directive requires states to impose cost sharing, while the SCHIP statute repeatedly provides that cost sharing is to be optional. *Id.* at 10-12. The August 17 Directive conditions expansion to additional populations

---

decision-making process and rationale behind agency action") (citations and internal quotation marks omitted).

upon the state enrolling 95 percent of lower income children in Medicaid or SCHIP, while the SCHIP statute requires a state to "cover" these children in its state plan but does not require the state to actually "enroll" these children into Medicaid or SCHIP before it can expand coverage to additional children. *Id.* at 12-14. This distinction is intentional, as Congress uses the words "cover" and "enroll" in different parts of the SCHIP statute and does not use these terms interchangeably. *Compare* 42 U.S.C. § 1397bb(b)(1)(B)(i) (using the word "cover") *with* 42 U.S.C. § 1397bb(b)(3)(B) (using the word "enrolled").[4]

The Secretary does not argue that congressional intent regarding the cost sharing or 95 percent enrollment provisions is ambiguous. Indeed, he offers no response at all. The intent of Congress with respect to the statutory provisions discussed by the Beneficiary Plaintiffs is clear. Since the analysis under *Chevron* step one demonstrates that the Directive violates the statute, that ends the inquiry and there is no need to reach step two. *See, e.g., Cohen,* 498 F.3d at 116; *Waterkeeper,* 399 F.3d at 497.

### B. The Directive is Arbitrary and Capricious.

In addition to violating the SCHIP statute, the Directive represents unreasonable decision-making in violation of the APA, 5 U.S.C. § 706(2)(A). The Secretary has now imposed standards on the states for which he has not provided thoughtful and relevant explanations. *See, e.g., Waterkeeper,* 399 F.3d at 498; *Public Citizen, Inc. v. Mineta,* 340 F.3d 39, 53 (2d Cir. 2003). In particular, by suddenly imposing these standards, the

---

[4] A fundamental canon of statutory construction is that, unless otherwise defined, "words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States,* 444 U.S. 37, 42 (1979). Webster's Dictionary defines "cover" as "to afford protection against,... to spread over," and it defines "enroll" as "to register." *Webster's New Collegiate Dictionary,* 262, 379 (2002).

7

Secretary has changed his policy without the sufficient rationale for the new approach that the Second Circuit demands:

> [T]he agency must explain why the original reasons for adopting the rule or policy are no longer dispositive. Even in the absence of cumulative experience, changed circumstances or judicial criticism, an agency is free to change course after reweighing the competing statutory policies. But such a flip-flop must be accompanied by a reasoned explanation of why the new rule effectuates the statute *as well as or better than the old rule.*

*Fox Television Stations, Inc. v. F.C.C.*, 489 F.3d 444, 56-457 (2d Cir. 2007) (citations and internal quotation marks omitted), *cert. granted*, 128 S.Ct. 1647 (2008).

The Beneficiary Plaintiffs previously pointed out that the Directive contains no analysis or data whatsoever to support the change in the regulations. Pl. SJ Mem. at 12, 14. Rather than explain his flip-flop, the Secretary responded to this argument with more silence. He has provided no relevant data, research, or verified studies to justify the rule change, and no analysis or explanation of how or why his newly-announced requirements are reasonable, necessary, or superior to the previous duly-promulgated regulations. Consequently, the Directive's requirements are arbitrary and capricious, and thus invalid.

### C. The Directive Was Not Promulgated in Accordance with the APA's Rulemaking Requirements.

In their opening brief, the Beneficiary Plaintiffs relied on recent Second Circuit case law to demonstrate that the Secretary had violated the APA's rulemaking requirements. Either the Directive was a legislative rule, or, if it was not legislative, it nevertheless represented a change in position; both of these circumstances require notice and comment in order for the rule to take effect. Pl. SJ Mem. at 14-20. Although the Secretary did not respond specifically to the Beneficiary Plaintiffs, his concluding

discussion arguably touches on some of the relevant points. *See* Def. Reply and Opp. at 30-42.

The Secretary terms the Directive "a general statement of policy," and states that it offers only "the review strategy" to be employed by CMS in future adjudications of proposed state plan amendments and that, pursuant to both its language and his conduct, the Directive is not legally binding. His major source of authority for these propositions is the D.C. Circuit's 1974 decision in *Pacific Gas & Electric Co. v. FPC*, 506 F.2d 33, in which that Court distinguished between legislative rules (which it called "substantive") and general statements of policy. Neither that decision nor the Secretary's arguments in No. 07 Civ. 8621 undercut the Beneficiary Plaintiffs' contention, however, that the Directive demands notice and comment rulemaking to be effective.

Two government reports specifically analyzing the Directive repudiate the Secretary's arguments. The Congressional Research Service (CRS) and the United States Government Accountability Office (GAO) independently have concluded that the Directive is a rule within the meaning of the Congressional Review Act (CRA) and that therefore the Secretary was obligated to report it to Congress for its consideration before implementing it.[5] While the reports do not answer the ultimate question in this case of whether the Directive is subject to notice and comment rulemaking, their analyses reject the premises on which the Secretary has constructed his argument and lead necessarily to

---

[5] The two reports are CRS, *Applicability of the Congressional Review Act to a CMS Guidance Document Regarding Statutory and Regulatory Requirements to be Used in Reviewing State Requests to Extend Eligibility Under SCHIP* (Jan. 10, 2008), http://rockefeller.senate.gov/press/CRSMemo01102008.pdf; and GAO, *Applicability of the Congressional Review Act to Letter on State Children's Health Insurance Program*, B-316048 (April 17, 2008) (cover letter Summary from the GAO's General Counsel and detailed Enclosure), http://www.gao.gov/decisions/other/316048.pdf.

9

the conclusion that the Beneficiary Plaintiffs have correctly analyzed the binding and legislative nature of the Directive.[6]

Under the CRA, the critical question is whether the document at issue is a "rule," for all rules require notification to Congress before they can take effect. *See* GAO Summary at 1. The CRA incorporates the definition of "rule" from the APA, 5 U.S.C. § 551(4), and that definition covers "almost all rules that an agency issues ...." GAO Enclosure at 5. The analysis of what constitutes a rule under the CRA necessarily informs the question of what rules are subject to rulemaking under the APA.

In its determination, the GAO noted that, in promulgating the regulation that the Directive now allegedly seeks to clarify, the then-Secretary had explicitly rejected the idea of establishing specific requirements for the states to follow to implement the SCHIP statute. The Directive, however, goes in precisely the opposite direction, as it imposes five precise measures and requires three additional guarantees, a point that was reiterated by the CRS and that the Beneficiary Plaintiffs had also made. *See* GAO Summary at 3-4; GAO Enclosure at 7-8; CRS Memo at 3-6; Pl. SJ Mem. at 19 & n.7. Thus,

> the letter amounts to a marked departure from the agency's interpretation of the regulation regarding substitution of coverage in the preambles to the proposed and final rules. Accordingly, because of this new regulatory interpretation and because an agency may only change a settled interpretation of its own rules through the promulgation of an amending rule, the letter serves the same purpose as a rule.

---

[6] The Beneficiary Plaintiffs did not contend that the Secretary's action violated the CRA because the CRA "provides that no determination, finding, action, or omission under the [CRA] shall be subject to judicial review." GAO Enclosure at 4 (footnote omitted).

10

GAO Enclosure at 8 (footnote omitted);[7] *see also* CRS Memo at 9, 10 (stating that "courts have held that an abrupt change of course requires a rulemaking to substantively alter those practices and relied upon interpretations").

The Directive's binding effect is further demonstrated, the GAO notes, by the fact that "CMS expressly relied on the August 17 letter to deny [New York's] request" to amend its SCHIP plan. GAO Enclosure at 8. Thus, "CMS's action demonstrates that the letter represents the agency's decision to bind itself to the application of the letter's terms and to give the letter present and binding effect." *Id.* at 9 (footnote omitted); *see also* CRS Memo at 3 (finding that "[t]he New York rejection and its lawsuit, and the apparent compromise by Wisconsin [to the terms of the Directive], underline the potentially large direct impact the CMS letter may have.") Again, the Beneficiary Plaintiffs had made the same point. *See* Pl. SJ Mem. at 17-18. The Secretary's claim that the Directive was a general statement of policy without binding effect has been expressly repudiated by the impartial analyses of disinterested government institutions.

The GAO also rejects the Secretary's reliance on the *Pacific Gas & Electric* case to support his contention that the Directive is a general statement of policy. GAO Enclosure at 11-13. Unlike the document in that case, the Directive is not tentative or inconclusive and includes neither proposals nor measures under development. Rather, it sets out requirements that the states must follow to obtain approval, not mere guidelines, and offers no exceptions. *See id.* at 11-12. Furthermore, "the time frame specified in the

---

[7] In the footnote to the above quotation, the GAO cited several decisions for the proposition that an agency may only alter a settled interpretation via rulemaking, including *Alaska Professional Hunters Ass'n v. Federal Aviation Administration*, 177 F.3d 1030, 1033-34 (D.C.Cir. 1999). The Second Circuit expressly relied on that decision for that point of law, as previously noted by the Beneficiary Plaintiffs. Pl. SJ Mem. at 18-19.

11

letter for states to conform to the CMS 'review strategy' evidences the agency's intention to give the letter present and binding effect." *Id.* at 12. Consequently, "[t]he inference to be drawn from the letter … is that states that do not conform to or adopt the measures described in the letter will likely be found to be not in compliance with SCHIP requirements." *Id.*

In addition, the GAO highlights the "practical effect" of the document at issue: "In subsequent proceedings, if the agency relies solely on the pronouncement itself to determine rights and obligations of others, the agency has treated the policy statement as if it were a binding rule, not a general statement of policy." *Id.* at 12-13. Accordingly, CMS' reliance on the Directive to disapprove New York's plan amendment demonstrates that it was not a mere policy statement. *Id.* at 13.

In short, the GAO emphatically rejects the Secretary's position that, under *Pacific Gas & Electric*, the language of the Directive and the Secretary's conduct in response to it demonstrate that it is a mere statement of policy. *See* Def. Reply and Opp. at 32-37. Rather, it is a binding legislative rule, as the Beneficiary Plaintiffs have previously explained. Pl. SJ Mem. at 15-18. At the very least, the Directive "reflects a significant change in the agency's settled interpretation of 42 C.F.R. § 457.805," GAO Enclosure at 13, and that change in interpretation alone suffices to require rulemaking under the APA. *See* Pl. SJ Mem. at 18-19.

The Secretary does not mention the GAO or CRS reports in his reply and opposition memorandum. Rather, he implicitly attempts to repudiate their conclusions by relying on a recent CMS "Dear State Health Official" Letter, SHO #08-003 (May 7, 2008), and a CMS letter to Rhode Island's Dept. of Human Services (May 9, 2008)

12

(attached as Exhibits A and B to Second Declaration of Serrin Turner in No. 07 Civ. 8621). The timing and content of these documents suggest that they were issued in response to this litigation and the GAO and CRS reports, and, not surprisingly, the Secretary concludes from them that "it cannot be said that the agency's conduct to date establishes an intent to treat the [August 17, 2007] SHO Letter as binding law." Def. Reply and Opp. at 36.

The new SHO Letter, however, does not alter the impact of the original Directive. It answers some questions that States have posed, and thus may clarify some points of confusion or misperception, but it does not repudiate the Directive's binding effect. With respect to the new 95 percent rule, for instance, the May 7 letter only suggests that different data may be used to make the calculations; the new requirement itself – or "[t]he assurance," as the May 7 letter refers to it – has not been changed.

The letter to Rhode Island is largely a confirmation that Rhode Island has met the terms of the Directive with respect to several of its requirements. This is not a demonstration of the Secretary's flexibility, as he contends, but of the fact that his "assurances" have been satisfied.

With respect to the Directive's requirement of a one-year period of uninsurance, CMS accepted the alternative proposed by Rhode Island. This action does not disprove the binding effect of the Directive; rather, it suggests only that equivalent approaches – "an alternative strategy" in the language of the CMS letter – exist, but that these are known only to CMS. That is, if there are exceptions to the requirements laid out in the Directive, they remain a secret. Again, this resolution does not reflect flexibility or

13

indicate that the Directive is merely a general statement of policy, but instead it suggests an agency exercising absolute control over the implementation of the SCHIP program.[8]

Neither the self-serving actions taken by CMS since the last round of briefing in these cases, nor the Secretary's arguments in No. 07 Civ. 8621, repudiate the Beneficiary Plaintiffs' contentions that the August 17 Directive required notice and comment rulemaking. The impartial agency reports consistently support the Beneficiary Plaintiffs' position and reject the Secretary's arguments. Accordingly, since the Directive was promulgated in violation of the APA, it is invalid and has no effect. The Secretary may attempt to re-issue it, but only after complying with the rulemaking requirements. *See, e.g., Riverkeeper, Inc. v. U.S.E.P.A.*, 475 F.3d 83, 96 (2d Cir. 2007), *cert. granted*, 128 S.Ct. 1867, 1868 (2008); *MST Express v. Dep't of Transp.*, 108 F.3d 401, 402, 406 (D.C.Cir. 1997).

---

[8] The Secretary's reliance on secret standards raises due process concerns. "[D]ue process requires that selections among applicants be made in accordance with 'ascertainable standards.'" *Holmes v. New York City Housing Auth.*, 398 F.2d 262, 265 (2d Cir. 1968) (citation omitted); *see also, e.g., Pressley Ridge Schools, Inc. v. Stottlemyer*, 947 F. Supp. 929, 940 (S.D.W.Va. 1996) (citing *Holmes* and holding that "[d]ue process further requires that decisions regarding entitlements to government benefits must be made according to 'ascertainable standards' that are applied in a rational and consistent manner"), *appeal dismissed*, 134 F.3d 1218 (4th Cir. 1998); *Burke v. United States Dep't of Justice, Drug Enforcement Agency*, 968 F. Supp. 672, 681 (M.D. Ala. 1997) ("To allow the DEA to administer a . . . scheme using unwritten standards leads to rule by decree and not by law.").

## CONCLUSION

For the reasons stated in this and in the Beneficiary Plaintiffs' other pleadings in this case, the Court should grant their Motion for Summary Judgment.

Dated: June 5, 2008                    Respectfully submitted,

                        MORGANNE MILES, by her mother KRYSTAL MILES; OLIVIA MILES, by her mother KRYSTAL MILES; PASCALE MOSSIN, by her mother AMY MARGARET MCCUTCHIN; THEO CHAN, by his father SUNNY CHAN; LEAH CHAN, by her father, SUNNY CHAN,

Through their attorneys,

*s/Bryan D. Hetherington*
Bryan D. Hetherington
Trilby de Jung
Empire Justice Center
One West Main Street, Suite 200
Rochester, NY  14614
(585) 454-4060

Juan Cartagena, General Counsel
Elisabeth Ryden Benjamin
Michelle Light
Community Service Society of New York
105 East 22nd St., 2nd Floor
New York, NY  10010
(212) 614-5461

Jane Perkins (admitted *pro hac vice*)
National Health Law Program
211 N. Columbia Street
Chapel Hill, NC  27154
(919) 968-6308 (x102)

Gill Deford (admitted *pro hac vice*)
Center for Medicare Advocacy, Inc.
PO Box 350
Willimantic, CT  06226
(860) 456-7790

15